UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **T-SCAN CORPORATION**, a Washington Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> **BPA TECHNOLOGIES, INC.**, a California Corporation; and **ALFRESCO SOFTWARE AMERICAS, INC.,** a Delaware Corporation, <br><br> Defendants. | **Case No.: 2:10-cv-470** <br><br> COMPLAINT <br><br> JURY DEMAND |

Plaintiff T-Scan Corporation, a Washington corporation ("T-Scan") brings this action for Fraud in the Inducement of a Contract, Breach of Contract, and Supplemental Claims against Defendant BPA Technologies, Inc., a California corporation ("BPA"), and Defendant Alfresco Software Americas, Inc., a Delaware corporation ("Alfresco"), (collectively "Defendants"), and alleges as follows:

## I.  THE PARTIES

1. Plaintiff T-Scan Corporation is a Washington corporation with its principal place of business in Seattle, Washington.

COMPLAINT - 1

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   2.   Defendant BPA Technologies, Inc. is a California corporation with its
2 principal place of business in Pleasanton, California.

3   3.   Defendant Alfresco Software Americas, Inc. is a Delaware corporation with
4 its principal place of business in Palo Alto, California.

## II. JURISDICTION AND VENUE

6   4.   This Court has personal jurisdiction over the Defendants within the Western
7 District of Washington because BPA is a California corporation with its principal place of
8 business and operations in Pleasanton, California, Alfresco is a Delaware corporation with
9 its principal place of business in Palo Alto, California, and plaintiff is a Washington
10 corporation with its principal place of business in Seattle, Washington.  28 U.S.C.
11 § 1332(a)(1).

12   5.   This Court has diversity jurisdiction over T-Scan's claims because the
13 parties are citizens of different states and the claims herein exceed $75,000, exclusive of
14 attorneys' fees and costs.  28 U.S.C. § 1332.

15   6.   This Court has supplemental jurisdiction over any state claims pursuant to
16 28 U.S.C. § 1367.

17   7.   Venue is proper in this district because all or a substantial part of the events
18 or omissions giving rise to the claim occurred within this district.  28 U.S.C. § 1391(a)(2).

## III. FACTUAL BACKGROUND

20   8.   Plaintiff T-Scan is a business that provides litigation support services and
21 medical, legal and insurance records storage and retrieval.

22   9.   T-Scan invests significant time, effort and money in enhancing its offerings
23 in order to stay ahead of its competition in this very competitive business.

24   10.   In early 2008, T-Scan determined that if it created a Web-based interface to
25 its records storage database, the enhanced service would allow its existing customers to

COMPLAINT - 2

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1 have ready access to their records stored on T-Scan's computers, and would allow T-Scan
2 to attract new customers to subscribe to T-Scan's offerings.

3     11.    T-Scan learned of Alfresco's open-source records storage and retrieval
4 software ("Content Manager") and contacted Alfresco for the purpose of licensing the
5 Alfresco Content Manager.

6     12.    After speaking with the Alfresco representative, T-Scan learned that the
7 Content Manager would not serve all of T-Scan's needs, but being open-source software, it
8 could easily be modified to serve T-Scan's needs.

9     13.    Alfresco has created a "Partner Network Program" ("PNP") wherein it
10 collaborates with other businesses who provide value-added services to further expand
11 Alfresco's customer base.

12     14.    The PNP is designed to provide partner organizations with the expertise to
13 market, configure, customize and implement Alfresco solutions for customers worldwide.

14     15.    Alfresco works with different categories of partners including those it
15 categorizes as "System Integrators."

16     16.    According to Alfresco's Web site, "System Integrators provide expertise
17 consulting, integration and migration services for Alfresco content management solutions.
18 All System Integrators have trained and certified Alfresco consultants on staff."

19     17.    Alfresco informed T-Scan that BPA is a member of Alfresco's Partner
20 Network Program and referred T-Scan to BPA.

21     18.    Based in large part on Alfresco's touting BPA's alleged ability to satisfy
22 T-Scan's needs, T-Scan contracted with BPA to acquire the software solution they needed
23 to provide the new offerings it wished to make.

24     19.    On or about May 14, 2008, BPA presented a "Proposal to T-Scan for
25 Implementation of Alfresco" ("Proposal I"), a copy of which is attached hereto as Exhibit
26 A, and by this reference fully incorporated herein.

20. In Proposal I, BPA estimated that the cost to T-Scan for all development would be approximately $33,600 and could be completed in six (6) weeks. Exhibit A at p. 12.

21. After some discussion, BPA sent a revised "Proposal to T-Scan for Implementation of Alfresco" ("Proposal II"), a copy of which is attached hereto as Exhibit B, and by this reference fully incorporated herein.

22. Proposal II contains more detail than Proposal I, and increases the estimate time to completion to eight (8) weeks, at a cost to T-Scan of $44,800 [Exhibit B, at pp. 7, 12[1]] plus an additional cost for a BPA engineer to go onsite at the T-Scan offices that BPA estimated to be approximately $4,100. *Id.* at 12.

23. After a significant transfer of knowledge about T-Scan's business operations by T-Scan to BPA, BPA produced a significantly more detailed proposal ("Proposal III"), accompanied by a "Business Process" document and a "System Requirements Specification" document. Copies of these documents are attached hereto as Exhibit C, and by this reference incorporated herein.

24. Curiously, BPA's estimation of the time-to-finish in Proposal III would be an elapsed period of seven (7) weeks, and at a cost to T-Scan of $39,200.

25. T-Scan and BPA entered into an agreement whereby BPA promised to create and deliver software specific to T-Scan's needs on a particular schedule, and T-Scan promised to pay an amount stated in the written agreement for the creation of the software.

26. In order to start the process, on June 6, 2008, BPA sought and received a $10,000 "mobilization advance" from T-Scan.

---

[1] The price quotation on p. 12 indicates a six (6) week elapsed time-to-finish, but appears to be a typographical error.

COMPLAINT - 4

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

27. In reliance on BPA's representations that the project would be completed in less than two (2) months, T-Scan paid the first of the license fees to Alfresco that would allow them to use the Alfresco software in a two-computer "production" environment.[2] The annual fee for such use was $30,000.

28. In order to get a good understanding of T-Scan's operation and needs, BPA sent one of its engineers to the T-Scan offices for two (2) weeks to gain that understanding.

29. The entire cost of the engineer being onsite at the T-Scan offices was borne by T-Scan, including, but not limited to, airfare, lodging and productivity time taken from T-Scan employees in order to provide the engineer with the knowledge he sought. The two (2) week visit cost T-Scan $18,249.06, $14,400.of which was attributed to "software development."

30. Apparently, software development was initiated, and on September 3, 2008, BPA invoiced T-Scan for, and was paid, an additional $20,400.

31. T-Scan had begun to, and continued to create detailed specifications of its needs to "flesh out" for BPA detailed specifications of the product in order to answer the many questions BPA posed. In effect, T-Scan was being required to do BPA's job for them because BPA seemed unable to grasp such concepts as, among other things, providing a method for sales tax calculation in the invoicing module of the software.

32. Sometime in late September 2008, BPA approached T-Scan and stated that the many of features that had been proposed to be implemented using the Alfresco software could not, in fact, be implemented in Alfresco. However, BPA stated, those features *could* be implemented using another software platform ("Liferay") that T-Scan was already using.

---

[2] A "production" environment is an environment where productive work occurs that supports the licensee's business. The converse is a "development" environment that is used primarily to create and/or test software prior to putting the software into "production."

COMPLAINT - 5

33. Relying on BPA's purported experience and expertise, T-Scan agreed to utilize that software platform.

34. In early October of 2008, and well over a month past the due date for completion of the project, BPA produced yet *another* proposal entitled, "A Proposal to T-Scan for Alfresco Implementation" ("Proposal IV"), a copy of which is attached hereto as Exhibit D and by this reference thereby made as part hereof.

35. Proposal IV specifically excludes some significant components of T-Scan's needs [Exhibit D, p.4, § 1.2.3], but the time-to-finish has been extended to 22 weeks (almost 3 times the original estimate), and the cost estimate has risen drastically to $110,000.

36. Approximately one month later, BPA presented an updated proposal ("Proposal V") now titled "A Proposal to T-Scan for Alfresco Liferay Portal Implementation. A copy of the proposal is attached hereto as Exhibit E and by this reference incorporated herein.

37. Proposal V has apparently split the user interface off as a separate item. Now, to implement the portion of the original proposal that BPA stated it could not implement using the Alfresco software, BPA provided a time-to-finish of 15 weeks. Exhibit E, § 5.0.

38. Assuming that progress was being made in the development effort, but growing concerned the estimated seven week project had now stretched to six months, T-Scan received another invoice from BPA in January 2009 for an additional amount of $25,000 for work that had, T-Scan believed at the time, been completed. T-Scan paid that amount, and concurrently renewed its annual license fee for the Alfresco software for another $30,000.

39. On or about December 22, 2008, BPA produced an expanded version of the "Proposal to T-Scan for Alfresco Liferay Portal Implementation" incorporating much of the

COMPLAINT - 6

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1 design work performed by T-Scan personnel.  A copy of that proposal is attached hereto as

2 Exhibit F and by this reference incorporated herein.

3     40. Although T-Scan had, at this time, already paid BPA $44,800 as was

4 invoiced by BPA, BPA acknowledged only the initial $10,000 "mobilization fee" and

5 claimed that T-Scan had outstanding invoices in the amount of $25,031.  Exhibit F, p. 50.

6     41. BPA now estimated that the project was now going to take 30 weeks time-

7 to-finish and cost T-Scan $133,031.  *Id.*

8     42. One week later, on December 30, 2008, BPA presented a slightly revised

9 version of its "Proposal to T-Scan for Alfresco Liferay Portal Implementation." A copy of

10 that proposal is attached hereto as Exhibit G and by this reference incorporated herein.

11     43. BPA had raised its estimate to 31 weeks and the project that was initially

12 quoted as a seven week, $39,000 project was now quoted at a cost of $136,631.

13     44. Having yet to receive a functional part of the overall product, T-Scan

14 indicated to BPA that it required some indicia of value received for its investment to-date

15 prior to remitting any further payment.

16     45. For the next ten months or so, BPA would upload various versions of the

17 software in development, whereupon, T-Scan employees would quickly determine that the

18 software was not functioning in the manner specified.  BPA was, in effect, requiring

19 T-Scan to incur significant additional costs of in-house computer staff to "test" BPA's

20 software.

21     46. On December 9, 2009, not having received any functioning software

22 whatsoever from BPA, T-Scan took the steps necessary to prohibit further access by BPA

23 personnel to T-Scan's computers.

24     47. After T-Scan cut off computer access to BPA, T-Scan hired another

25 programming consultant who is knowledgeable about the Alfresco software.

26

COMPLAINT - 7

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

48. After reviewing BPA's work, that engineer informed T-Scan that the software provided by BPA was unusable.

49. The engineer further indicated that, contrary to its representations to T-Scan, BPA had not made any custom modifications to the Alfresco software, and that the Alfresco software was in a state that was "right out of the box."

50. After gaining an understanding of T-Scan's needs, the engineer stated clearly that the portions of the software application T-Scan sought, and claimed by BPA to not be able to be done in Alfresco, could have been done in Alfresco.

51. As of December 9, 2009, T-Scan has paid BPA more than $73,649.

52. On February 24, 2010, by and through the law offices of The Chugh Firm, BPA sent T-Scan a demand for $101,631 for alleged services rendered that remain unpaid. In the demand letter, BPA generally alleges that these fees are a result of "changes in scope" of the original project.

53. To date, BPA has not delivered a single useable piece of software to T-Scan.

### IV. CLAIMS FOR RELIEF

### CLAIM I
### FRAUD IN THE INDUCEMENT OF THE CONTRACT
### (All Defendants)

54. Plaintiff hereby repeats and realleges paragraphs 1 – 53 as though fully set forth herein.

55. As stated, *supra*, Alfresco requires that "[a]ll System Integrators have trained and certified Alfresco consultants on staff."

56. When negotiating with T-Scan for the project, BPA knew that Alfresco imposes this requirement on all members of its Partner Network Program.

57. When negotiating with T-Scan, BPA knew that it did not have a trained and certified Alfresco consultant on staff.

58. By holding itself out to T-Scan as an Alfresco Partner, BPA represented to T-Scan that it had a trained and certified Alfresco consultant on its staff.

59. BPA knew that it did not have a trained and certified Alfresco consultant on its staff and thereby knew that it was misrepresenting to T-Scan that it did have a trained and certified Alfresco consultant on its staff.

60. By holding itself out as an Alfresco Partner, BPA intended for T-Scan to believe that BPA had a trained and certified Alfresco consultant on its staff in order to entice T-Scan into a contractual relationship with BPA.

61. By BPA holding itself out to be an Alfresco Partner, BPA deceived T-Scan into believing that BPA had an Alfresco trained and certified consultant on its staff and T-Scan justifiably relied to its detriment on BPA's misrepresentations when it agreed to enter into the contractual relationship with BPA.

62. As a result of BPA's misrepresentations and failures to perform, along Alfresco's misrepresentations, T-Scan has beens injured in an amount to be proved at trial, but in excess of $75,000.

## CLAIM II
## BREACH OF CONTRACT
## (BPA Only)

63. Plaintiff hereby repeats and realleges paragraphs 1 – 62 as though fully set forth herein.

64. When negotiating with T-Scan, and on numerous occasions, BPA committed to deliver software to T-Scan that was functional and substantially addressed and satisfied T-Scan's particular needs.

65. BPA has failed to deliver the software.

66. Due to the non-delivery of the software, BPA has breached its commitment to T-Scan to deliver the software.

COMPLAINT - 9

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

67. As a result of that breach, T-Scan has been injured in an amount to be proved at trial.

### CLAIM III
### BREACH OF CONTRACT
### (BPA Only)

68. Plaintiff hereby repeats and realleges paragraphs 1 – 67 as though fully set forth herein.

69. When negotiating with T-Scan, and on numerous occasions, BPA committed to deliver software to T-Scan that was functional and substantially addressed and satisfied T-Scan's particular needs on particular time schedules.

70. BPA has not met its deadlines for delivery of the software.

71. Due to the non-delivery of the software on the dates agreed, BPA has breached its commitments to T-Scan.

72. As a result of that breach, T-Scan has been injured in an amount to be proved at trial.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment as follows:

1. That the Court finds that documents and conduct of the parties prove that contracts exist among the parties;

2. That the Court find that BPA breached its contract with T-Scan when it failed to create and deliver software that functioned;

3. That the Court find that BPA breached its contract with T-Scan when it failed to produce software on the time schedule agreed;

4. That the Court find that the Defendants made a representation of material fact when they told T-Scan that BPA was a qualified member of the Alfresco Partner Network Program when, in fact, BPA did not have a trained and certified Alfresco person

1 on its staff;

2     5.    That the Court find that the representation was false;

3     6.    That the Court finds that the Defendants intended for T-Scan to rely on their false representations;

5     7.    That the Court find that T-Scan justifiably did rely on the Defendants' false representations when it agreed to enter into the contractual relationship with them;

7     8.    That the Court find that T-Scan was injured thereby;

8     9.    That the Court find that the Defendants breached their covenants of good faith and fair dealing with T-Scan;

10     10.    That the Court order the contracts among the parties affecting T-Scan be rescinded;

12     11.    That the Court order the Defendants to remit to T-Scan those amounts that they have received from T-Scan;

14     12.    That the Court order the Defendants to remit to T-Scan its losses suffered as a result of the hours of manpower required of T-Scan to train the BPA personnel details about T-Scan's business;

17     13.    That the Court order the Defendants to remit to T-Scan its losses suffered as a result of the hours of manpower required of T-Scan to test the BPA software;

19     14.    That the Court order Defendant to pay to T-Scan both the costs of this suit and the reasonable attorneys' fees incurred by T-Scan in investigating and prosecuting this action.

22     15.    That the Court grant to T-Scan such other and additional relief as is just and proper.

## VI.  JURY DEMAND

Plaintiff respectfully demands a jury trial.

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1     Dated this 16th day of March 2010.

2                                   Respectfully submitted,

3                                     CARPELAW PLLC

4                                     *s/ Robert S. Apgood*
                                     Robert S. Apgood, WSBA #31023

5                                     Attorney for Plaintiffs
                                     CARPELAW PLLC

6                                     2400 NW 80th Street #130

7                                     Seattle, WA 98117-4449
                                    Telephone: (206) 624-2379

8                                     Facsimile: (206) 784-6305
                                    Email: rob@carpelaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 12                                                                     **CARPELAW PLLC**
                                                                                   2400 NW 80th Street #130
                                                                                   Seattle, Washington 98117
                                                                     (206) 624-2379 - (206) 784-6305 (fax)