HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-Scan CORPORATION, a Washington Corporation,

      Plaintiffs,

      vs.

BPA TECHNOLOGIES, INC., et al.,

      Defendants.

Case No.:  2:10-cv-0470

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S MOTION FOR SUMMARY JUDGMENT

NOTED ON CALENDAR MARCH 25, 2011

## I.    INTRODUCTION

Plaintiff T-Scan Corporation ("T-Scan") has sued Defendants BPA Technologies, Inc. ("BPA") and Alfresco Software Americas, Inc. ("Alfresco") for Fraud in the Inducement of a Contract, and BPA Technologies, Inc. only for two counts of Breach of Contract, arising from business transactions among the parties.

On February 28, 2011, BPA filed its Motion for Summary Judgment ("Motion") wherein it alleges that BPA was forced to cease work on the software it claims it was developing for T-Scan's needs and that T-Scan is the cause for BPA's failure to complete the software development project that T-Scan retained BPA to perform.  BPA further alleges that T-Scan's

1  claim of breach by BPA for failure of delivery of the completed software on a date certain is of no

2  moment because, BPA asserts, there was no deadline.  As shall be shown, *infra*, BPA's assertions

3  in its motion contain significant and material omissions of fact that, when included, paint an

4  entirely different scenario than that which BPA attempts to paint.

5       1.     In early 2008, Andre Nieuwendam, T-Scan's Information Technologies Manager,,

6  in concert with Scott Tamfer, the Chief Operating Officer of T-Scan, determined that if T-Scan

7  created a Web-based interface to its records storage database, the enhanced service would allow its

8  existing customers to have ready access to their records stored on T-Scan's computers, and would

9  allow T-Scan to attract new customers to subscribe to T-Scan's offerings.  *Declaration of Andre*

10  *Nieuwendam in Support of Plaintiff's Opposition to Defendant BPA's Motion for Summary*

11  *Judgment* ("Nieuwendam Decl.") at ¶ 3.

12       2.     In furtherance of seeking a solution for their needs, Andre J. Nieuwendam began to

13  research software solutions that would enable T-Scan to meet its needs to make this offering. *Id.* at

14  ¶ 4.  Mr. Nieuwendam reviewed several possible solutions, and ultimately determined that the

15  content management system offered by Alfresco Software Americas, Inc. ("Alfresco") would

16  meet most, if not all, of T-Scan's needs.  *Id.* at ¶ 5.  Mr. Nieuwendam contacted Alfresco and

17  described T-Scan's needs to them.  *Id.* at ¶ 6.  Alfresco indicated that, while their software

18  would meet most of T-Scan's needs, some modifications to their software would be required.

19  *Id.* at ¶ 7.  Alfresco referred Mr. Nieuwendam to BPA Technologies, Inc. indicating that BPA

20  was"System Integrator" for Alfresco's software and had earned the distinction of being a Gold

21  Partner System Integrator.  *Id.* at ¶ 8.

22       Mr. Nieuwendam visited the Web site located at <http://www.alfresco.com> to see if

23  he could learn more about BPA's expertise in Alfresco.  *Id.* at ¶ 9.  I looked for, and found,

24  references to BPA in the Alfresco System Integrators area.  *Id* at ¶¶ 10 – 18.  Of particular

25  note, the Alfresco Web site indicates that "[a]ll Systems Integrators have trained and certified

26  Alfresco consultants on staff." *Id.* at ¶ 16.  The Systems Integrators page shows BPA to be an

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 2
Case No. 2:10-cv-0470

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   Alfresco System Integrator partner. *Id.* at 17.  After being referred to BPA by Alfresco and

2   reading the information on the Alfresco Web site related to BPA, Mr. Nieuwendam contacted

3   BPA to ascertain whether they could make the enhancements to the CMS that T-Scan required.

4   When speaking to the BPA sales representative, Mr. Nieuwendam was told by him that BPA is

5   a Gold Partner with Alfresco and was qualified to make the changes to the CMS that T-Scan

6   required. *Id.* at ¶¶ 19 - 20.  Recalling that "[a]ll System Integrators have trained and certified

7   Alfresco consultants on staff," Mr. Nieuwendam concluded that BPA, being a System

8   Integrator for Alfresco, also had a "trained and certified Alfresco consultant on staff." *Id.* at

9   ¶ 21. And, based upon his years of experience in Information Technology and programming,

10  Mr. Nieuwendam well understood the significance of the representation that, as being an

11  Alfresco partner, BPA was making a claim to technical expertise. *Id.* at ¶¶ 22 - 23.  Mr.

12  Nieuwendam relied heavily on the representations when considering and acquiring the

13  Alfresco software and when retaining BPA to make the enhancements.  It was not until much

14  later, and only after BPA failed to deliver the goods as promised, the Mr. Nieuwendam

15  discovered that BPA did *not* have a trained and certified Alfresco consultant on staff at any

16  time during the interactions between T-Scan and BPA.  *Id.* at ¶¶ 24 - 25.

17          Sometime around September 2008, BPA notified T-Scan that T-Scan's needs could not

18  be fully implemented using the CMS and, upon discovering that T-Scan already was a licensee

19  of the software product "Liferay Portal," BPA informed T-Scan that the functionality it desired

20  could be implemented using Liferay Portal.  *Id.* at ¶ 26.  It was only after T-Scan had dismissed

21  BPA that an Alfresco engineer reviewed T-Scan's needs and informed T-Scan that the

22  functionality it desired, and which BPA had informed T-Scan could not be implemented in the

23  CMS, could indeed have been implemented in the CMS.  *Id.* at ¶ 27.  After T-Scan had already

24  paid Alfresco an amount in excess of $ 60,000, T-Scan was informed  that the support T-Scan

25  had purchased from Alfresco permitted BPA to consult with Alfresco at no cost to BPA

26  regarding T-Scan's needs and, if used, would have given BPA programmers the knowledge

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   and training they could have used to implement T-Scan's needs wholly within the Alfresco

2   CMS. *Id.* at ¶¶ 28 – 30. After terminating the relationship with BPA, an Alfresco engineer,

3   Richard McKnight, reviewed the work that BPA allegedly had performed and discovered that

4   BPA had actually done very little work on modifying the Alfresco CMS. *Id.* at ¶ 31. Mr.

5   McKnight also informed T-Scan that the functionality T-Scan desired and that BPA had stated

6   could not be implemented in the Alfresco CMS, *could* have been implemented in the Alfresco

7   CMS. *Id.* at ¶ 32.

8          In an email dated November 6, 2008, BPA's employee, Vasu Maganti, informed

9   T-Scan that the work that BPA had done as of that date, and for which T-Scan had paid BPA

10  an amount in excess of $48,600, contained nothing that could be salvaged. *Id.* at ¶ 33. This

11  information came as no surprise to T-Scan as, from the time that BPA delivered the first

12  version of the software to T-Scan, T-Scan employees spent an average of 2 – 3 hours each day

13  testing the software and detecting deficiencies. On no occasion did T-Scan receive a version of

14  the BPA software that functioned properly and many times, the software did not function at all.

15  Mr. Nieuwendam concluded that BPA was not testing its own software prior to delivering it to

16  T-Scan. Rather, BPA submitted the software to T-Scan and T-Scan employees to suffer the

17  expense and time of testing the software. *Id.* at ¶¶ 34 – 36.

18         In BPA's May 7, 2008 version of its proposal to T-Scan, BPA indicated that the

19  software development to meet T-Scan's needs would require six (6) weeks to complete from

20  the inception of development.   Nieuwendam Decl. at ¶ 37, Exhibit "A" to the Complaint at 7.

21         In BPA's May 14, 2008 version of its proposal to T-Scan, BPA indicated that the

22  software development to meet T-Scan's needs would require eight (8) weeks to complete from

23  the inception of development. Nieuwendam Decl. at ¶ 38, Exhibit "B" to the Complaint at 7.

24         In BPA's May 29, 2008 version of its proposal to T-Scan, BPA indicated that the

25  software development to meet T-Scan's needs would require eight (8) weeks to complete from

26  the inception of development. Nieuwendam Decl. at ¶ 39, Exhibit "C" to the Complaint at 7.

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 4
Case No. 2:10-cv-0470

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    In BPA's October 10, 2008 version of its proposal to T-Scan, BPA indicated that the

2    software development to meet T-Scan's needs would require twenty-two (22) weeks to

3    complete from the inception of development. Nieuwendam Decl. at ¶ 40, Exhibit "D" to the

4    Complaint at 13.  In that version of the proposal, BPA claims that the first fifteen (15) weeks of

5    development had already been completed.  As such, the very latest that BPA could have begun

6    modifications to the CMS would have been June 25, 2008.  Using BPA's own schedule, the

7    project would have to be completed no later than November 17, 2008.  Nieuwendam Decl. at

8    ¶ 41.

9    In BPA's November 28, 2008 version of its proposal (the "Liferay" version), BPA now

10   claims that only the first five (5) weeks of development had already been completed.  As such,

11   the very latest that BPA could have begun modifications to the CMS would have been October

12   29, 2008.  Using BPA's own schedule, the project would have to be completed no later than

13   February 6, 2009.  *Id.* at ¶ 42.

14   In BPA's December 30, 2008 and final version of its proposal, BPA unambiguously

15   states that all development will be completed by April 10, 2009.  T-Scan blocked all access to

16   its computers on December 15, 2009, more than eight full months after the deadline set by

17   BPA for project completion. *Id.* at ¶ 43.  As of December 15, 2009, BPA had failed to deliver

18   the goods as promised.

19   BPA represented to Mr. Nieuwendam that it was a "Gold Partner" System Integrator in

20   the Alfresco Partner Network.  *Id.* at ¶ 45.  This representation was material in Mr.

21   Nieuwendam's investigation of what Alfresco represents a Gold Partner System Integrator to

22   be and in his subsequent recommendation to T-Scan management to retain the services of

23   BPA.  Of particular importance to Mr. Nieuwendam in making that recommendation and

24   subsequent decision was the fact that Alfresco requires its Gold Partner System Integrator to

25   have a trained and certified Alfresco consultant on staff.  *Id.* at ¶ 46.  However, as Mr.

26

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 5
Case No. 2:10-cv-0470

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   Nieuwendam discovered, BPA did not at any time relevant to the project have such a trained

2   and certified Alfresco consultant on its staff.  *Id.* at ¶ 47.

3            At the time BPA made the representation to Mr. Nieuwendam that it was an Alfresco

4   Gold Partner, BPA knew that it did not have a trained and certified Alfresco consultant on its

5   staff.  BPA intended that T-Scan believe that BPA was an Alfresco Gold Partner System

6   Integrator and all that the designation implied, including the implicit representation that BPA

7   had a trained and certified Alfresco consultant on its staff.  When BPA made its representations

8   to T-Scan that BPA was a Gold Partner System Integrator, BPA knew that T-Scan did not have

9   any knowledge of the fact that BPA did not have a trained and certified Alfresco consultant on

10  its staff, as is required by Alfresco of its partners.  T-Scan relied upon the truth that BPA was a

11  Gold Partner System Integrator and the implicit representations of all that is required to be an

12  Alfresco Gold Partner System Integrator, including the implicit representation that BPA had a

13  trained and certified Alfresco consultant on its staff.  T-Scan was damaged by BPA's

14  representations because T-Scan never received BPA-modified software that functioned per T-

15  Scan's requirements, T-Scan paid in excess of $48,600 to BPA and more than $60,000 to

16  Alfresco for which T-Scan received no benefit.  *Id.* at ¶¶ 48 – 52.

17           As of December 15, 2009, BPA had utterly failed to deliver the goods to T-Scan as

18  promised and failed to come even close to the self-imposed deadline of April 10, 2009. *Id.* at

19  ¶ 53.

20           Plaintiff T-Scan now offers this opposition to BPA's motion as follows

21                          **II.      <u>OPPOSITION</u>**

22           In its Motion, BPA observes that when Mr. Tamfer was "asked whether Alfresco had

23  made any *specific statements about BPA* which influenced T-Scan's decision to work with

24  BPA Tamfer twice stated that he did not recall any such statements." Motion at 3:3-5.  As Mr.

25  Nieuwendam testifies in his declaration, it was he who was the Information Technologies

26  Manager and it was he who initially contacted Alfresco and BPA.  Whether Mr. Tamfer ever

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 6
Case No. 2:10-cv-0470

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   received any such statements is of no moment.  Whether Mr. Nieuwendam ever received any

2   such specific statements might be relevant because it was Mr. Nieuwendam who had the initial

3   and regular contact with Alfresco and BPA.  However, for reasons unfathomable, BPA elected

4   to not depose Mr. Nieuwendam.  If it had deposed Mr. Nieuwendam, BPA might well have

5   received a very different answer.  But, BPA did not, T-Scan submits, because BPA got the

6   answer it wanted and which fuels its innuendo.

7          BPA goes on at length about Mr. Tamfer's lack of knowledge about the meaning or

8   import of the statement on the Alfresco's Web site "pertaining to certified and trained Alfresco

9   consultants." Motion at 3:6 – 16.  Again, Mr. Tamfer, who is the Chief Operating Officer of

10  T-Scan is not presumed to know answers to technical questions about computer programs and

11  technical consultants.  It was Mr. Nieuwendam's responsibility to know such things and, based

12  upon his numerous years of experience with Information Technologies and programming, he

13  quite likely would have provided BPA with technical answers to their technical questions.  But,

14  again, BPA elected to not depose Mr. Nieuwendam, so we will never know how he would have

15  responded.

16         BPA alleges that it "submits evidence that T-Scan never asked BPA whether it had any

17  trained or certified consultants on staff, and that BPA never discussed the subject with T-Scan.

18  As Mr. Nieuwendam testifies, Alfresco recommended BPA to T-Scan, and Alfresco's Web site

19  unambiguously states, "All System Integrators have trained Alfresco consultants on staff."

20  Based upon these representations, T-Scan had no reason to question Alfresco's veracity and,

21  apparently, Alfresco had no obvious reason to believe that a company Alfresco touts as their

22  partner was not in compliance with Alfresco requirements,   However, it *is* clear why BPA

23  "never discussed the subject with T-Scan." BPA did not want to draw attention to the fact that

24  it had no trained and certified Alfresco consultant on its staff for fear of losing the business.

25         BPA goes on to point out that Mr. Tamfer erroneously testified that at the time of

26  T-Scan's initial contact with BPA, BPA's Web site did not contain the information that BPA

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 7
Case No. 2:10-cv-0470

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1  was an Alfresco Gold Partner System Integrator.  However, BPA attempts a feint move of no

2  significance because whether that information was on BPA's Web site or not is irrelevant.

3  Alfresco had BPA listed on *its* Web site as a Gold Partner System Integrator, stated that "[a]ll

4  System Integrators have a trained and certified Alfresco consultant on its staff" and it was

5  Alfresco that referred T-Scan to BPA.  BPA disingenuously implies that simply because BPA

6  did not list Alfresco on the BPA Web site that such omission relieves BPA of the Alfresco

7  requirement to have a trained and certified Alfresco consultant on its staff.

8       In its Motion, BPA alleges that T-Scan "admitted that defining the scope was

9  difficult…" and further stated that it "probably had not done its best to facilitate the scoping

10  process…".  Motion at 6:14 – 17.   T-Scan has reviewed the email that BPA contends contains

11  this admission.  However, nothing in the email supports BPA's contention.  BPA carefully

12  slices out a sliver of the message that could be interpreted to support their contention.

13  However, the full paragraph of the email reads,

14  
15  
16  
17  
18  
19  
20  
21  
22  
> Thank you for your phone call. I personally have the upmost confidence that BPA will do an excellent job in the delivery of this system, and that we will be doing a lot of work together in the future. Please tell Harsha that we are not taking this upon him personally, Scott has a commitment to his clients to have this out and done well given the software issues we have had in the past. As a developer I understand that it is difficult to absorb a company's business model in a short period of time, and had it been my project and my choice, I would have orchestrated it differently. In terms of the Liferay Integration, I would like to make sure we give you a detailed insight to the custom Portlets and the mail system, as these are the most important aspect of this. We will be preparing a design document with the flow from Alfresco to the Portlets that we would like to see integrated. I will be sitting with Yaso to make sure there is a clear understanding regarding these and then provide Harsha and Rama with very accurate descriptions as to what Scott wants to see.

23  Here, Mr. Nieuwendam is criticizing the manner in which Harsha Rachapalli, a BPA

24  employee, handled the project and, unlike BPA's contention that T-Scan's "defining the scope

25  was difficult," Mr. Nieuwendam merely observed that "it is difficult to *absorb* a company's

26  business model in a short period of time…" (emphasis added).  BPA significantly misstates the

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 8
Case No. 2:10-cv-0470

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    substance of Mr. Nieuwendam's email message and twists it to say that Mr. Nieuwendam is

2    admitting to T-Scan shortcomings when the message makes no such admissions and is clearly

3    being critical of how BPA handled the project.  As Mr. Nieuwendam stated, "[H] ad it been my

4    project [and not BPA's], I would have orchestrated it differently."

5           BPA contends that the December 30, 2008 (dubbed by BPA as the "Liferay Proposal")

6    "did not contain a deadline for completion of the project, only estimated timeframes for the

7    various portions of the development." Motion at 8:3 – 4.  However, contrary to BPA's

8    assertions now, the December 30, 2008 version of the proposal contains specific dates; dates

9    set by BPA.  Exhibit G to the Complaint at 50.  Moreover, there are *specific* dates printed in

10   the document ("22nd December, 2008", "3rd February, 2009", "10 April, 2009"), not "estimated

11   timeframes" as BPA now avers.

12          In its lengthy recitation of the history of the project, BPA makes numerous averments

13   regarding the content of exhibits.  Similar to BPA's misstating the substance of its own

14   document alleging that it does not contain deadline dates, BPA alleges in its Motion at 10 – 13,

15   "Because T-Scan was an Alfresco customer, and therefore had more leverage, the parties

16   agreed that T-Scan would engage Alfresco to provide a solution." In support of this allegation,

17   BPA refers the reader to an email thread dated June 24, 2009 (Exhibit F to the Suryadevara

18   Declaration, Dkt. No. 40).  However, nothing in the exhibit refers to BPA and T-Scan agreeing

19   to T-Scan applying leverage to Alfresco.  Rather, a unilateral statement by the BPA employee

20   "Murali" states "Your team will have to work directly with  Alfresco support or engineering to

21   resolve the site creation issue.  They have not been able to provide us with a solution."  BPA

22   paints the picture that all was harmonious between BPA and T-Scan. It was not.  Over a period

23   spanning in excess of two (2) years, BPA had not even delivered on the original scope of

24   functionality stated in the original version of the proposal dated May 7, 2008.

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 9
Case No. 2:10-cv-0470

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    On December 15, 2009, and over eight (8) months *after* BPA's "Development

2  Complete" date of April 10, 2009, T-Scan decided to staunch the blood-flow of money being

3  paid to BPA and terminated BPA's access to T-Scan computers.

### III.    DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the

nonmoving party, the record shows that "there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)). Once the

moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving

party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on

file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "The mere existence of a scintilla

of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy*

*Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 2003). "[S]ummary judgment should be

granted where the nonmoving party fails to offer evidence from which a reasonable jury could

return a verdict in its favor." *Id.* at 1221.

**B.    Fraud in the Inducement of the Contract (Claim I)**

BPA alleges that "[to] prevail on its fraud in the inducement claim, T-Scan must

establish each of the elements of fraud with 'clear, cogent and convincing evidence" citing to

*Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 920, 4256 P.2d 891 (1967).  Motion at 12:1 –

3.  BPA alleges that the nine elements of fraud are:

> (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the
> speaker's knowledge of its falsity; (5) the speaker's intent that it should be
> acted on by the person to whom it is made; (6) the recipient's ignorance of its
> falsity; (7) the recipient's reliance on the truth of the representation; (8) the
> recipient's right to rely upon it; and (9) consequent damages.

citing to *Adams v. King County*, 164 Wn.2d 640, 662, 192 P.3d 891, 902 (2008) as its

authority.  BPA goes on arguing that "[f]ailure to prove any one of the nine elements is fatal to

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1  recovery" citing to *Puget Sound Nat'l Bank v. McMahon*, 53 Wn.2d 51, 54, 330 P.2d 559, 561

2  (1958).  BPA finishes, [t]o be clear, cogent and convincing, the evidence must be greater than

3  a mere preponderance" citing to *Markov v. ABC Transfer & Storage Co.*, 76 Wn.2d 388, 395,

4  457 P.2d 535, 539 (1969).

5       Addressing each element *in seriatim*, T-Scan disputes BPA's assertion that "[t]here is

6  no factual dispute about whether BPA made a false representation to T-Scan regarding BPA's

7  employment of a trained and certified Alfresco consultant." Motion at 12:16 – 17.

8       1.       A representation of an existing fact: Mr. Nieuwendam testifies that when BPA

9  made the statement that it was a Gold Partner System Integrator to him, BPA knew it did not

10  have a trained and certified Alfresco consultant in its employ.

11       2.       Its materiality: Mr. Nieuwendam testifies that that the designation as a "Gold

12  Partner" and all that it implies was material to his investigation of what Alfresco represents a

13  Gold Partner System Integrator to be.  Further, knowing that Alfresco requires that its Gold

14  Partner System Integrators have a trained and certified Alfresco consultant on its staff was

15  material to Mr. Nieuwendam's decision to recommend to his management that T-Scan retain

16  the services of BPA. By holding itself out as a Gold Partner System Integrator, BPA implicitly

17  represented that it had a trained and certified Alfresco consultant on its staff.

18       3.       Its falsity: Mr. Nieuwendam testifies that it wasn't until sometime later that Mr.

19  Nieuwendam discovered that BPA did *not* have a trained and certified Alfresco consultant on

20  its staff.

21       4.       The speaker's knowledge of its falsity: Mr. Nieuwendam testifies that at the

22  time BPA made the representation that it was a Gold Partner System Integrator, it knew that it

23  did not have a trained and certified Alfresco consultant on its staff.

24       5.       The speaker's intent that it should be acted on by the person to whom it is

25  made: Mr. Nieuwendam testifies that BPA intended that T-SCAN believe that BPA was an

26  Alfresco Gold Partner System Integrator and all that the designation implied, including the

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 11
Case No. 2:10-cv-0470

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1  implicit representation that BPA had a trained and certified Alfresco consultant on its staff, so

2  as to get T-Scan's business.

3           6.        The recipient's ignorance of its falsity: Mr. Nieuwendam testifies that when

4  BPA made its representations to T-SCAN that BPA was a Gold Partner System Integrator,

5  BPA knew that T-SCAN did not have any knowledge of the fact that BPA did not have a

6  trained and certified Alfresco consultant on its staff, as is required by Alfresco of its partners.

7           7.        The recipient's reliance on the truth of the representation: Mr. Nieuwendam

8  testifies that T-SCAN relied upon the truth that BPA was a Gold Partner System Integrator and

9  the implicit representations of all that is required to be an Alfresco Gold Partner System

10  Integrator, including the implicit representation that BPA had a trained and certified Alfresco

11  consultant on its staff.

12          8.        The recipient's right to rely on upon it: Because Alfresco represented that BPA

13  was one of its Gold Partners, and because BPA represented that it was a Gold Partner System

14  Integrator of Alfresco, and because all system integrators must have a trained and certified

15  Alfresco consultant on its staff, T-Scan reasonably concluded that BPA had a trained and

16  certified Alfresco consultant on its staff.  As such, T-Scan had the right to rely on BPA's

17  statements and representations.

18          9.        Consequent Damages: T-Scan's reliance to its detriment on BPA's

19  representations caused T-Scan to pay BPA in excess of $46,600, and to pay Alfresco more

20  than $60,000 for which T-Scan received no benefit.

21          All these evidentiary facts could result in a jury finding in T-Scan's favor that BPA

22  committed fraud in the inducement of the contract between BPA and T-Scan. However,  As

23  such, Claim I is not subject to being dismissed on summary judgment since BPA and T-Scan

24  dispute the material facts of T-Scan's claim and must be put before a trier of fact.

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 12
Case No. 2:10-cv-0470

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   **C.     T-Scan's Understanding of the Meaning or Importance of the Statement on**
2   **Alfresco's Web site**

3         BPA represents that because Mr. Tamfer, the Chief Operation Officer of T-Scan did
4   not have an understanding of the meaning or importance of the statement on Alfresco's Web
5   site that "[a]ll System Integrators have a trained and certified Alfresco consultant on its staff,"
6   that *all* of T-Scan did not understand the meaning or importance of the statement.  BPA
7   misleads itself just as it attempts to mislead this Honorable Court.  Mr. Nieuwendam testifies
8   that he understands the meaning and importance of the statement, and Mr. Nieuwendam was
9   the Information Systems Manager and a programmer and is qualified to assess the statement
10  and understand its meaning and importance.  His understanding of the meaning and
11  importance of the statement was material to him when considering whether to retain BPA.

12  D.     **Washington's Independent Duty Doctrine**

13        BPA alleges that Washington's independent duty doctrine precludes T-Scan from
14  recovering on its claim.  Motion at 14:6 – 8.  As BPA accurately observes, the Washington
15  Supreme Court stated in *Affiliated FM Ins. Co.*: "[i]f aggrieved parties to a contract could
16  bring tort claims whenever a contract dispute arose, certainty and predictability in allocating
17  risk would decrease and impede future business activity." *Affiliated FM Ins. Co.*, 470 Wn.2d at
18  451 – 52, 243 P.3d at 527.  However, BPA misapprehends the significance of the Court's
19  ruling in that T-Scan's tort claim is not a contract dispute.  Rather, it was a tortuous act that
20  was committed prior to the parties entering into the contract.  As such, the Washington
21  independent duty doctrine does not apply in this case.

22  **E.     T-Scan's allged preventing BPA from performing its obligations**

23        BPA contends that T-Scan prevented them, from performing under the contract by
24  cutting off access to the T-Scan computers.  Motion at 15:19.  BPA goes on to allege that
25  "there can be no dispute that T-Scan prevented BPA from completing its development work."
26  Motion at 16:9 – 10.  However, BPA doesn't admit that it did the development work on their

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 13
Case No. 2:10-cv-0470

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    own computers and uploaded their software to T-Scan's computer for the purpose of T-Scan

2    testing the software.  T-Scan vigorously disputes BPA's alleged "facts" regarding BPA's

3    inability to complete software development.  They simply fly in the face of representations by

4    both parties that BPA was doing its development on its own computers found in BPA's

5    exhibits to the declarations of Vijji Suryadevara and Vasu Maganti.

6    **F.    BPA missing its deadlines**

7           BPA insists that there was no deadline in the Liferay version of the proposal dated

8    December 30, 2008. BPA knows full well that it set deadlines for completion of the project

9    with a deadline for completion of the project by April 10, 2009.  Those deadlines are clearly

10   stated on page 50 of the proposal and BPA tied them to specific milestones.  BPA's citations to

11   case law that it deems relevant are of no moment.  The plain language in the December 30,

12   2008 proposal has dates that BPA set and which were accepted by T-Scan.

13          When BPA had failed to deliver the goods promised a full eight months after the

14   expiration of the April 10 deadline, T-Scan terminated BPA's access to T-Scan computers to

15   limit its damages.

16                              **IV.    CONCLUSION**

17          Having shown that a significant number of material facts are in dispute, and the

18   significant materiality of those facts, this case cannot be, and should not be dismissed on

19   Summary Judgment.  In Mr. Nieuwendam's testimony, he provides specific facts showing that

20   there are genuine issues of material fact that must be put before a trier of fact in order to

21   ascertain the rights and liabilities of the parties.

22          A reasonable jury could well return a verdict in favor of T-Scan based upon T-Scan's

23   evidence and testimony of Mr. Nieuwendam.  Consequently, BPA is not entitled to judgment

24   as a matter of law and T-Scan respectfully submits that BPA's motion must be dismissed in its

25   entirety.

26

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S
MOTION FOR SUMMARY JUDGMENT - 14
Case No. 2:10-cv-0470

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    DATED this 21st day of March 2011.

2                                    Respectfully submitted,

3                                     s/ *Robert S. Apgood*
                                     Robert S. Apgood, WSBA 31023
4                                    CARPELAW PLLC
                                     2400 NW 80th Street #130
5                                    Seattle WA 98117
                                     Vox: 206-624-2379
6                                    Fax: 206-784-6305
                                     Email: rob@carpelaw.com
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT BPA'S                CARPELAW PLLC
MOTION FOR SUMMARY JUDGMENT - 15                      2400 NW 80th Street #130
Case No. 2:10-cv-0470                                  Seattle, Washington 98117
                                             (206) 624-2379 - (206) 784-6305 (fax)