THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-SCAN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BPA TECHNOLOGIES, INC., et al.<br><br>Defendants. | CASE NO. 2:10-cv-470<br><br>DEFENDANT BPA TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT<br><br>**NOTED ON MOTION CALENDAR MARCH 25, 2011** |

## I. INTRODUCTION

BPA Technology Inc. ("BPA") respectfully requests that the Court grants its request for summary judgment against T-Scan Corporation ("T-Scan") for the reasons outlined below.

## II. DISCUSSION

**A.  T-Scan's Fraud in the Inducement Claim is Legally and Factually Insufficient.**

In response to the evidence presented by BPA – that BPA did not make any false statements of fact to T-Scan that allegedly influenced T-Scan's decision to enter into an agreement with BPA – T-Scan points to a statement made by Alfresco Software Americas, Inc. ("Alfresco"), which is a third party to the T-Scan-BPA transaction. Further, T-Scan relies on conjecture by Andrew Nieuwendam as to the meaning of the alleged misstatement. In any event, T-Scan produces no evidence that the alleged misstatement was false, and fails to rebut the clear testimony of T-Scan's Chief Operating Officer regarding T-Scan's alleged reliance on the

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 1
CASE NO. 2:10-CV-470

**FOCAL PLLC**
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

1  purported misstatement. T-Scan's opposition fails to overcome its factual burden on its fraud

2  claim. Finally, even if the Court finds that T-Scan can meet its evidentiary burden, T-Scan's

3  claim is barred by the independent duty doctrine.

4      T-Scan cannot rely on vague statements or conjecture (lacking any factual support), in

5  order to meet its summary judgment burden. Where the non-moving party bears the burden of

6  proof at trial on a dispositive issue, the non-moving party bears the burden of production under

7  Rule 56 to designate "*specific facts* showing that there is a genuine issue for trial." *See Celotex*

8  *Corp.* v. *Catrett*, 477 U.S. 317, 324 (1986) (emphasis added). "One of the principal purposes of

9  the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses,

10  and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Id*. at

11  323-24. "[The rule's] standard provides that the mere existence of some alleged factual dispute

12  between the parties will not defeat an otherwise properly supported motion for summary

13  judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*

14  *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

15      1.    <u>T-Scan has failed to produce factual support for its fraud claim</u>.

16      T-Scan's Opposition contains a litany of testimony from Andrew Nieuwendam regarding

17  BPA's alleged misstatements, but the only three statements which ostensibly support T-Scan's

18  claim for fraud in the inducement are: (1) a statement that BPA was a "System Integrator

19  partner" of Alfresco (Declaration of Andre Nieuwendam ("Nieuwendam Decl.") (Dkt. 44) at ¶

20  8); (2) a statement that BPA was a "Gold Partner with Alfresco and was qualified to make the

21  changes to the CMS that T-Scan required" (*Id*. at ¶ 20); and (3) a statement that "all System

22  Integrator partners have a trained and certified Alfresco consultant on staff." (*Id*. at ¶ 16.)

23      There is no dispute that BPA is a System Integrator partner. T-Scan admits that Alfresco

24  told T-Scan that BPA is a System Integrator partner, and therefore this statement cannot be the

25  basis of a fraud claim. The same is true of BPA's "Gold Partner" status. "Gold Partner" status is

26  something conferred by Alfresco, and since T-Scan alleges that Alfresco told Mr. Nieuwendam

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 2
CASE NO. 2:10-CV-470

**FOCAL PLLC**
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

that BPA was a "Gold Partner," this statement similarly cannot form the basis of a fraud claim. Mr. Nieuwendam also alleges that BPA told him that it was "qualified" to make any changes "to the CMS that T-Scan required," but Mr. Nieuwendam does not offer any specifics on what this qualification allegedly consisted of. Nor does Mr. Nieuwendam allege who at BPA made this statement or the context in which this statement was made. In any event, T-Scan's allegations regarding the alleged falsity of this statement are contradicted by T-Scan's testimony regarding what Alfresco told T-Scan about BPA (i.e., that "BPA was a 'System Integrator' . . . and had earned the distinction of being a Gold partner"). Any qualification to develop on Alfresco's software would be conferred by Alfresco, and as admitted by T-Scan, Alfresco obviously thought that BPA was qualified to do so. These statements therefore cannot form the basis of T-Scan's fraud claim.

The final statement which could form the basis of T-Scan's fraud claim is the statement that BPA – as a System Integrator – would have "trained and certified Alfresco consultants on staff." (Opposition at 3:6-8.) However, a close examination of T-Scan's filings show that *BPA* never made this statement. (*See* Opposition at 2:24-36 ("Of particular note, *the Alfresco website* indicates that 'all Systems Integrators have trained and certified Alfresco consultants on staff.'") (emphasis added).) There is no evidence to show that BPA was even aware of this statement's existence on the Alfresco website. While T-Scan argues throughout its opposition that there was some "implicit" representation by BPA regarding an Alfresco consultant (because of the statement on Alfresco's website), T-Scan fails to produce any credible evidence to this effect. At a minimum, T-Scan would need to demonstrate that BPA knew that Alfresco's website contained the statement.

Moreover, even if BPA had made the statement that it had "trained and certified Alfresco consultants" on staff, T-Scan has failed to offer any admissible evidence demonstrating that this statement was false – i.e., that BPA did not have a "trained and certified Alfresco consultant" on BPA's staff. In this regard, T-Scan relies solely on Andre Nieuwendam's declaration which

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 3
CASE NO. 2:10-CV-470

FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

states that "[i]t was not until much later, and long after BPA failed to deliver the goods . . . that I learned that BPA did not have a trained and certified Alfresco consultant on staff" (Nieuwendam Decl. at ¶ 25), and that "BPA knew that it did not have a trained and certified Alfresco consultant on its staff." (Nieuwendam Decl. at ¶ 48.)  Mr. Nieuwendam's statements are unsupported by any detail or evidence or any kind.  He fails to provide any specific facts about how he supposedly became aware of BPA's qualifications and where he derived this information.  Further, there is no basis for his conjecture that BPA "knew" that it had no Alfresco consultant.  Indeed, the alleged falsity of this statement is belied by Mr. Nieuwendam's own testimony that Alfresco told Mr. Nieuwendam that BPA was a "Gold Partner."  (*See* Nieuwendam Decl. at ¶ 8 ("Alfresco . . . indicated that BPA . . . had earned the distinction of being a Gold Partner System Integrator.").)  Mr. Nieuwendam's bare allegation that BPA had no trained or certified Alfresco consultants on staff is insufficient to carry T-Scan's burden on summary judgment.

      2.      <u>T-Scan fails to allege reasonable reliance</u>.

Another problem with T-Scan's fraud argument is that Mr. Nieuwendam's testimony regarding BPA's alleged misstatements contradicts the testimony of T-Scan's Chief Operating Officer.  Mr. Tamfer was the decision-maker (along with Mr. Nieuwendam) with respect to T-Scan's decision to engage BPA, and he had this to say about BPA's alleged misstatements:

> Q. Were there any statements that Alfresco made specifically that you recall that influenced your decision to go with Alfresco?
>
> A. Not that I recall.
>
> Q. Were there any statements Alfresco said specifically about BPA that you recall that influenced your decision to explore a relationship with BPA?
>
> A. I don't recall.

(Tamfer Dep. at 21:16-23.)  Certainly, a material statement that would form the basis of T-Scan's fraud claim would have been something that its Chief Operating Officer, and one of its decision-makers, would recall and testify about.  The fact that Mr. Tamfer did not recall these alleged

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 4
CASE NO. 2:10-CV-470

Focal PLLC
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

misstatements belies Mr. Nieuwendam's allegations and undermine's the factual basis for T-Scan's fraud claim.

    3.    <u>T-Scan's fraud claim is precluded by Washington's independent duty doctrine</u>.

T-Scan argues that the alleged fraud tort occurred prior to the parties contracting with one another, and that therefore the independent duty doctrine does not apply. T-Scan does not cite to any authority in support of the argument that its fraud in the inducement claim should be analytically disconnected from the contract to which it alleges it was fraudulently induced to enter.

In distinguishing between a claim where a plaintiff is limited to contract remedies and cases where recovery in tort may be available, a court is to determine whether there was a tort duty that arose independently of the terms of a contract. *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 389, 241 P.3d 1256, 1261-62 (2010). If no such duty exists, then the plaintiff may not recover in tort. *Id*. at 1262. T-Scan has failed to articulate any independent tort duty that BPA owed to T-Scan. In fact, no such separate and distinct duty exists. The terms of the agreements between BPA and T-Scan (both sophisticated commercial entities) sets forth the only duties each owed to the other. In these circumstances, Washington's independent duty doctrine bars T-Scan's claims for fraud in the inducement.

For the above reasons, T-Scan's claim for fraud in the inducement of the contract should be dismissed.

**B.**     **T-Scan Prevented BPA from Completing Development.**

BPA produces competent evidence to show that it worked diligently and delivered software that was near completion, and that T-Scan blocked access to T-Scan's servers to prevent BPA's completion of its task. T-Scan's only factual rebuttal to BPA's argument that T-Scan prevented completion of the development is that BPA "did the development work on their own computers and uploaded their software to T-Scan's computer for the purpose of T-Scan testing the software." (Opposition ("Opp.") (Dkt. 43) at 13:26-14:5.) T-Scan also states that "T-

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 5
CASE NO. 2:10-CV-470

**FOCAL PLLC**
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

1  Scan vigorously disputes BPA's alleged 'facts' regarding BPA's inability to complete software
2  development." (Opp. at 14:2-3.)  Neither of these statements, nor anything contained elsewhere
3  in T-Scan's opposition or Mr. Nieuwendams's declaration, provides specific facts required to
4  demonstrate a genuine issue of factual dispute.  In particular, the sole testimony from T-Scan that
5  BPA failed to perform and deliver substantially functional software to T-Scan consists of Mr.
6  Nieuwendam's statement that "[o]n no occasion did T-Scan receive a version of the BPA
7  programming that functioned properly and many times received versions that did not function at
8  all." (Nieuwendam Decl., ¶ 35.)  This statement is unsupported by any specific facts regarding
9  the alleged deficiencies in BPA's deliverables, and contradicts T-Scan's own statements that the
10 project was "close" to fruition. (*See generally* Motion for Summary Judgment ("Motion") (Dkt.
11 39) at 9:24-10:24.)  Additionally, the statement contradicts documentation generated by Mr.
12 Nieuwendam himself in the form of bug reports that demonstrate BPA's deliverables were
13 largely functional and required correction of a small amount of errors. (*Id*. at 10:5-8;
14 Suryadevara Decl. ¶ 15, Ex. K.)  T-Scan also fails to rebut BPA's unequivocal evidence that T-
15 Scan prevented BPA from completing performance.

16     T-Scan admits that it "blocked all access to T-Scan's computers," (Nieuwendam Decl. at
17 ¶ 44) thereby preventing BPA from completing its development efforts.  T-Scan also admits that
18 it failed to provide BPA any notice prior to taking this step. (Tamfer Dep. at 68:17-22.)  While it
19 is true that much of the development work was conducted on BPA's computers, the completion
20 of the project obviously depended on T-Scan's involvement in the final testing.  Moreover, the
21 project required constant communication between the two parties.  By cutting off BPA's access
22 to T-Scan's computers, and by ceasing all communications with BPA, T-Scan prevented the
23 parties from working together to finalize the project.  BPA has provided evidence that the
24 application had been installed in T-Scan's environment (i.e., on T-Scan's computers) in August.
25 (Declaration of Vasu Maganti (Dkt. 41) ¶ 4, Ex. I.)  Further, BPA has provided evidence that
26 subsequent to installation of the application on T-Scan's computers, the parties engaged in

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 6
CASE NO. 2:10-CV-470

FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

testing, and that the testing demonstrated that the project was near completion. (*See generally* Motion for Summary Judgment ("Motion") (Dkt. 39) 9:21-10:24.) T-Scan has not submitted any evidence to place any of this in dispute. T-Scan's only response is that that it "vigorously disputes BPA's alleged 'facts'." But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. T-Scan's mere statement that it disputes BPA's facts does not go beyond the allegations in T-Scan's complaint. T-Scan cannot rest upon the allegations in its complaint, but must establish each element of its claim with "significant probative evidence tending to support the complaint." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1980). T-Scan must present facts in evidentiary form and cannot rest upon the pleadings. *Anderson*, 477 U.S. at 248.

**C.    T-Scan Fails to Rebut BPA's Arguments Regarding Recovery of Amounts Paid Under the August 2008 Agreement.**

T-Scan similarly offers no argument or evidence to dispute that when it entered into the Liferay Agreement (i.e., with respect to the second project), T-Scan had been informed that the development work previously done by BPA under the August 2008 Agreement would not be salvageable. In fact, Andre Nieuwendam admits this in his declaration. (Nieuwendam Decl. at ¶ 33.) T-Scan cannot credibly dispute that it agreed to pay for the work provided under the August 2008 Agreement, *in addition to* the new costs for development work to be provided under the Liferay Agreement. The Liferay Agreement evidences that, as it states "BPA expects to receive the payment of $25,031 towards pending invoices with T-Scan *relating to the previous project*." (emphasis added) (Motion 7:11-21; Declaration of Sean M. McChesney ("McChesney Decl.") (Dkt. 42) Ex. E, p. 50.) The two projects (the first under the August 2008 Agreement and that second under the Liferay Agreement) were separate and incompatible. To use an analogy, it's as if a builder is asked to build a house out of wood, gets three-quarters complete, and then the

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 7
CASE NO. 2:10-CV-470

FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

1  prospective homeowner tells the builder he wants a house made of brick instead. The three-
2  quarter built house made of wood will be torn down and scrapped, but surely the builder is
3  entitled to be paid for that construction; especially if the prospective owner enters into a new
4  agreement with the builder wherein he specifically promising to pay the builder for that
5  construction. Furthermore, the prospective homeowner can't claim breach of contract for failure
6  of the builder to deliver a brick house.

Regardless of the Court's ultimate decision regarding the breach of contract claim with respect to the Liferay Agreement, T-Scan has no credible argument to recover the amounts paid to BPA for BPA's work under the August 2008 Agreement. The project under the first agreement was never finished because T-Scan requested a new project implementing Liferay, and T-Scan knew that the development work which *had* been completed would be useless. T-Scan agreed to pay BPA for that work nonetheless. Nothing in the record creates a factual dispute on this issue.

**D.   T-Scan Fails to Address the Changes in Scope Which Led to Delay of Completion.**

The second component of T-Scan's breach of contract claim is based on its allegation that BPA failed to complete development on a timely basis. BPA has presented evidence that the two agreements at issue in this dispute[1] contain only estimates of when development would be completed, and has presented the Court with compelling evidence in support of those assertions.

---

[1] T-Scan's opposition goes to great lengths to set forth facts pertaining to the various proposals that BPA prepared. (*See* Opp. at 4:18 to 5:18; Nieuwendam Decl. at ¶¶ 37-43.) Yet none of the proposals referred to in its opposition (and attached to its complaint) were actually executed by the parties. Those proposals were merely working drafts which BPA produced as it learned more about T-Scan's requirements. (*See* Motion at 4:15-22; Deposition Transcript of Scott Tamfer (attached as Exhibit A to the McChesney Decl.) 39:6-19; 43:11-18; 44:20-45:1.) The only two agreements that were executed by the parties are the August 2008 Agreement (curiously missing from T-Scan's complaint altogether) and the Liferay Agreement. Those two agreements, signed by T-Scan, provide that they supersede all prior proposals or communications between the parties. (*See* McChesney Decl., Ex. B, p. 16; Ex. E, p. 51.) Thus, T-Scan's recitation of the estimates for completion (or, presumably, "deadlines" in T-Scan's view) contained in each of those documents is wholly irrelevant to the issues at hand.

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 8
CASE NO. 2:10-CV-470

**FOCAL PLLC**
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

1  Each of the agreements contain a statement concerning the estimated development duration
2  which begin "BPA estimates," followed by the applicable estimated timeframe.  T-Scan asserts
3  that the Liferay Agreement contains dates certain for completion.  (Opp. at 9:7-11.)  Yet, T-Scan
4  fails to acknowledge that those dates are qualified by the statement at the top of the page, which
5  states "BPA *estimates* that this project will take 31 weeks elapsed time . . . ." (emphasis added)
6  (McChesney Decl., Ex. E, p. 50.)

7  Regardless, T-Scan offers no argument or evidence to dispute that completion of the
8  Liferay development was significantly delayed due to changes in scope subsequent to execution
9  of the Liferay Agreement, as well as by other events and circumstances (including T-Scan's own
10  shifting requirements).  The evidence before the Court makes clear that the timelines in the
11  agreements were only estimates.  For example, T-Scan points out in its opposition (Opp. at 9:7-
12  11) that the Liferay Agreement included the date "22nd December, 2008," which corresponded
13  to the estimated date for the start of development.  (*See* McChesney Decl., Ex. E, p. 50.)  <u>But the</u>
14  <u>Liferay Agreement was not even executed until January 29, 2009</u>.  (*See* Motion at 8:19-21;
15  McChesney Decl., Ex. E, p. 51.)[2]  Consequently, initiation of the development work had already
16  been delayed over one month from the estimated date for beginning development which was
17  contained in the Liferay Agreement.  Yet T-Scan holds out that the December 22, 2008 was a
18  deadline. (Opp. at 9:7-11.)  Clearly it was not.

19  BPA has also provided evidence demonstrating that T-Scan requested changes to the
20  scope of the project which further delayed completion.  For example, BPA has provided
21  evidence demonstrating that in June 2009, T-Scan requested that BPA integrate another Alfresco
22  product called Share, which BPA agreed to undertake, although this necessarily meant delay in
23  completion of the project. (*See* Declaration of Vijji Suryadevara (Dkt. 40) at ¶ 12, Ex. D, Ex. E,

---

[2] Page 51 of the Liferay Agreement contains the date 1/29/08 under Scott Tamfer's signature. However, this is clearly an error, as the parties – by T-Scan's own admission - did not even engage one another until April 2008.  The actual date Mr. Tamfer signed the contract was 1/29/2009.

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 9
CASE NO. 2:10-CV-470

FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

Ex. F.)

Again, T-Scan has failed to offer any evidence to establish a factual dispute regarding the above. Consequently, T-Scan's claims of breach of contract for BPA's alleged failure to comply with timelines should be dismissed.

**E.     The Nieuwendam Declaration is Rife With Hearsay Testimony Which Should be Stricken or Disregarded.**

The key evidence submitted by T-Scan in opposition to BPA's summary judgment motion is the Declaration of Andrew Nieuwendam. However, key portions of Mr. Nieuwendam's testimony are based on hearsay and should be disregarded. It is well understood that at the summary judgment stage, a party may only submit testimony that is based on personal knowledge. Fed. R. Civ. P. 56(e); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir.1995).

Hearsay statements included in Mr. Nieuwendam's testimony include the following, and this testimony should be stricken or disregarded:

- "an Alfresco engineer reviewed T-Scan's needs and informed T-Scan that the functionality [T-Scan] desired . . . could indeed have been implemented in the CMS" (¶ 27);

- "an Alfresco engineer, Richard McKnight, reviewed the work that BPA allegedly had performed and discovered that BPA had actually done very little work inn [sic] modifying the Alfresco CMS" (¶ 31); and

- Mr. McKnight "informed [Mr. Nieuwendam] that the functionality T-Scan desired . . . could have been implemented in the Alfresco CMS." (¶ 32.)

### III.   CONCLUSION

No reasonable jury could find for T-Scan based on the evidence submitted by T-Scan in this proceeding. Therefore, for the reasons set forth above and in BPA's pending motion for summary judgment, BPA respectfully requests that the Court grant BPA's motion.

DATED: March 25, 2011

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 10
CASE NO. 2:10-CV-470

**FOCAL PLLC**
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

1  Respectfully Submitted,

2  *s/ Sean M. McChesney*
   Sean M. McChesney, WSBA #36973
3  Venkat Balasubramani, WSBA #28269

4  FOCAL PLLC
5  800 Fifth Avenue, Suite 4100
   Seattle, WA 98136
6  Tel:    (206) 617-3040
7  Fax:    (206) 260-3966
   Email: sean@focallaw.com
8  Email: venkat@focallaw.com

9  Attorneys for Defendant
   BPA TECHNOLOGIES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 11
CASE NO. 2:10-CV-470

FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827

# CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2011, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to the following counsel of record:

- Robert S. Apgood
  rob@carpelaw.com

DATED: March 25, 2011

*s/ Sean M. McChesney*
Sean M. McChesney, WSBA# 36973

DEF.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 12
CASE NO. 2:10-CV-470

FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, Washington 98104
Tel: 206.529.4827