

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAY - 6 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

10-CV-00470-ORD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-SCAN CORPORATION,<br><br>                Plaintiff,<br><br>        v.<br><br>BPA TECHNOLOGIES, INC.,<br><br>                Defendant. | CASE NO. C10-470 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

        This matter comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 39.) Having received and reviewed Defendant's motion, Plaintiff's Response (Dkt. No. 43), Defendant's Reply (Dkt. No. 45), and all related declarations and exhibits, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment.

**Background**

        Plaintiff T-Scan Corporation ("T-Scan") is a record retrieval company with headquarters in Seattle, Washington. Defendant BPA Technologies, Inc. ("BPA") provides custom software solutions and is listed as a "Gold Partner" of former co-defendant, Alfresco Software Americas, Inc. ("Alfresco"), on Alfresco's website.

1       In early 2008, T-Scan's Information Technologies Manager, Andre Nieuwendam, and

2 Chief Operating Officer, Scott Tamfer, began researching software to create a web-based records

3 storage interface. (Dkt. No. 44 ¶¶ 3, 4.) Nieuwendam contacted Alfresco to discuss its content

4 management system. (Id. ¶¶ 5, 6.) Alfresco referred Nieuwendam to BPA for additional

5 software modifications, indicating that BPA was a "Gold Partner System Integrator." (Id. ¶ 8.)

6 Nieuwendam learned from Alfresco's website that "[a]ll System Integrators have trained and

7 certified Alfresco consultants on staff." (Id. ¶ 16.) Nieuwendam contacted a BPA

8 representative, who confirmed that BPA was a Gold Partner of Alfresco. (Id. ¶ 20.)

9 Nieuwendam selected BPA to handle the necessary modifications. (Id. ¶ 24.)

10       Between May and August 2008, T-Scan and BPA negotiated the specifics of the project.

11 (Dkt. No. 42, Ex. 1 (Tamfer Dep.) 35:6-11; Dkt. 40 ¶¶ 3-5.) On August 8, 2008, BPA submitted

12 a proposal ("August Proposal"), which Nieuwendam signed two days later. (Dkt. No. 42, Ex. B.)

13 A couple weeks later, Nieuwendam informed BPA that T-Scan would be changing the project by

14 switching its user interface to a platform called the "Liferay Portal." (Dkt. No. 40, Ex. C.) BPA

15 informed T-Scan that none of the work that had been done thus far could be salvaged for the

16 Liferay-based project. (Dkt. No. 41, Ex. G.) On December 30, 2008, BPA submitted a new

17 proposal for the work to be done towards the Liferay project ("Liferay Proposal"). (Dkt. No. 42,

18 Ex. E.) The Liferay Proposal explicitly indicated that BPA expected payment "towards pending

19 invoices with T-Scan relating to previous project [sic]." (Id. at 50.) Tamfer signed the Liferay

20 Proposal on January 29, 2009.[1] (Id. at 51.)

21

22

---

23 [1]The date on the document is 1/29/08. However, BPA points out that the parties did not meet until April 2008, and
   the Liferay Proposal was not executed until after the August Proposal. BPA asserts that the date is accurate and only

24 the year is an error. T-Scan does not dispute this, and the Court assumes 1/29/09 is the correct date.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 2

1       The Liferay Proposal included dates by which BPA would complete certain deliverables.

2 (Id. at 46-48.) The proposal indicated that development would be complete by April 10, 2009.

3 (Id. at 50.) T-Scan argues that April 10, 2009, was a contractual deadline; BPA maintains the

4 dates were merely estimates.

5       Development continued through various scope changes and adjustments until December

6 15, 2009, when T-Scan cut off BPA's access to T-Scan's computers and servers.  (Tamfer Dep.

7 112:19-113:14.) BPA sent T-Scan a letter demanding payment for outstanding invoices. (Dkt.

8 No. 40 ¶ 17.) T-Scan filed suit against BPA for fraud in the inducement of a contract and breach

9 of contract on March 16, 2010. (Dkt. No. 1.) T-Scan also sued Alfresco, but this Court

10 dismissed the claims against Alfresco for improper service. (Dkt. No. 35.)

11 **Discussion**

12       BPA requests summary judgment with respect to T-Scan's claims of fraud and breach as

13 well as BPA's counter claim of breach against T-Scan.  BPA additionally asks the Court to grant

14 summary judgment with respect to T-Scan's prayer "[t]hat the Court order the Defendants to remit

15 to T-Scan those amounts that they have received from T-Scan[.]" (Dkt. No. 1 at 11.)

16       "Summary judgment will not lie if ... the evidence is such that a reasonable jury could

17 return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

18 (1986).  Nor is summary judgment warranted if a material issue of fact exists for trial. Warren v.

19 City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 516 U.S. 1171 (1996).  The

20 underlying facts are viewed in the light most favorable to the party opposing the motion.

21 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

22       The party moving for summary judgment has the burden to show initially the absence of

23 a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159

24 (1970).  However, once the moving party has met its initial burden, the burden shifts to the

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 3

1   nonmoving party to establish the existence of an issue of fact regarding an element essential to

2   that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v.

3   Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party cannot rely

4   on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.

5   Id. at 324.  To be cognizable on summary judgment, evidence must be competent.  Carmen v.

6   S.F. Unified Sch. Dist., 237 F.3d 1026, 1028 (9th Cir. 2001).  "An affidavit or declaration used

7   to support or oppose a motion must be made on personal knowledge, set out facts that would be

8   admissible in evidence, and show that the affiant or declarant is competent to testify on the

9   matters stated."  Fed. R. Civ. P. 56(c)(4).

10  **A.      Fraudulent Inducement**

11          T-Scan alleges BPA committed fraud by indicating that it was one of Alfresco's "Gold

12  Partners" when BPA did not employ a trained Alfresco consultant.  BPA argues (1) T-Scan

13  cannot prove the elements of a fraud claim and (2) the fraud claim is precluded by the

14  independent duty doctrine.  Having determined that summary judgment is proper based on T-

15  Scan's failure to present competent evidence supporting its fraud claim, the Court does not reach

16  the latter argument.

17          In order to prevail on a fraud claim, a plaintiff must establish nine elements by "clear,

18  cogent, and convincing evidence."  Stiley v. Block, 130 Wn.2d 486, 505 (1996).  "The nine

19  elements of fraud are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the

20  speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the

21  plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the

22  representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff."  Id.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 4

1    T-Scan's fraud theory rests on BPA's statement to T-Scan that BPA was an Alfresco

2  "Gold Partner System Integrator." (Dkt. No. 44 ¶ 45.) Alfresco's website indicated that "All

3  System Integrators have trained and certified Alfresco consultants on staff." (Dkt. No. 44 ¶ 16.)

4  T-Scan argues that BPA's representation of being a Gold Partner was false because BPA did not

5  have an Alfresco consultant on staff. T-Scan offers the Declaration of Nieuwendam (Dkt. No.

6  44) to establish each of the elements of fraud. (Def. Opp'n Br. at 11.) The declaration is

7  insufficient to demonstrate a material issue of fact exists as to T-Scan's fraud claim.

8    Although Nieuwendam can testify to his reliance on BPA's representations and their

9  materiality, he is not competent to testify to the knowledge and intent of BPA. T-Scan offers no

10 additional evidence to support these elements, arguing only that "Nieuwendam testifies that at

11 the time BPA made the representation that it was a Gold Partner System Integrator, it knew that

12 it did not have a trained and certified Alfresco consultant on staff" and "Nieuwendam testifies

13 that BPA intended that T-Scan believe that BPA was an Alfresco Gold Partner … to get T-

14 Scan's business." Id. The declaration fails to demonstrate that Nieuwendam has personal

15 knowledge of any of these facts. See Fed. R. Civ. P. 56(c)(4). Even T-Scan's evidence that BPA

16 did not have an Alfresco consultant on staff is established only by the Nieuwendam declaration.

17 T-Scan has not provided any depositions, admissions, or other discovery to demonstrate a jury

18 could find BPA committed fraud. As a result, T-Scan has not produced any "clear, cogent, and

19 convincing evidence" to establish BPA had knowledge that its representation to T-Scan was false

20 or that BPA intended its misrepresentation to induce T-Scan into a contract. There is no genuine

21 issue of material fact. The Court grants BPA's motion for summary judgment with respect to T-

22 Scan's fraud claim.

23 //

24

1 | **B.    Breach of Contract**

2          BPA requests summary judgment with respect to both T-Scan's breach of contract claim

3 | against BPA and BPA's counterclaim.  T-scan alleges BPA has breached the contract by failing

4 | to deliver software by the April 10, 2009, deadline.  (Dkt. No. 1 ¶¶ 65, 70.)  BPA counters that

5 | the contract did not contain deadlines and that T-Scan breached the contract by cutting off BPA's

6 | access to T-Scan's computers in December 2009.  Resolution turns on whether the contract

7 | contemplated deadlines for BPA's completion.  Because a question of fact exists as to whether

8 | the contract indicated deadlines, the Court denies BPA's motion for summary judgment.

9          "Courts faced with questions of contract interpretation must discern the intent of the

10 | contracting parties[.]"  Hearst Commc'ns, Inc. v. Seattle Times Co., 120 Wn. App. 784, 791

11 | (2004) aff'd, 154 Wn.2d 493 (2005).  In Washington, courts "attempt to determine the parties'

12 | intent by focusing on the objective manifestations of the agreement, rather than on the

13 | unexpressed subjective intent of the parties."  Hearst, 154 Wn.2d at 503.  Courts "impute an

14 | intention corresponding to the reasonable meaning of the words used … [and] give words in a

15 | contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly

16 | demonstrates a contrary intent."  Id.  Any ambiguities in the document are to be construed

17 | against the drafter of the instrument.  Riss v. Angel, 80 Wn. App. 553, 556 (1996). A contract

18 | provision is ambiguous if it is "fairly susceptible to two different, reasonable interpretations."

19 | Wm. Dickson Co. v. Pierce County, 128 Wn. App. 488, 493 (2005).

20          "Where a contract is silent as to time of duration, it will be implied that performance was

21 | intended to take place within a reasonable time."  Smith v. Smith, 4 Wn. App. 608, 612 (1971).

22 | "What constitutes a reasonable time is a question of fact which is dependent upon the subject

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 6

1   matter of the contract, the situation of the parties, their intention and the circumstances attending

2   the performance of the contract." Id.

3        Here, in the section of the Liferay Proposal titled "Project Price and Payment Terms,"

4   three dates are listed. (Dkt. No. 42, Ex. E at 50.) The first date, December 22, 2008, marks the

5   start of development; the last date, April 10, 2009, marks the date by which development will be

6   complete. (Id.)

7        BPA argues the dates are not deadlines. First, BPA argues that these dates are merely

8   estimates, as indicated by the fact that the section begins "BPA estimates that this project will

9   take 31 weeks elapsed time at an estimated cost of US $111,600." (Id.) Second, BPA argues

10  that the Liferay Proposals provides that the parties "will work together to assess project impact

11  caused by significant scope changes and BPA will implement the scope changes[.]" (Id. at 50.)

12  BPA asserts that "[w]ell into the development process, T-Scan requested additional functionality,

13  such as the Share integration." (Pl. Mtn. Br. at 17.) Third, BPA notes the contract was not

14  signed by T-Scan's COO until January 29, 2009, over a month after the date on which

15  development was 'estimated' to begin on the timetable. These arguments are insufficient to

16  prove the absence of a question of fact.

17       BPA's first argument that the timelines were estimates is undermined by the fact that the

18  timelines are recorded elsewhere in the Liferay proposal without indications that they are

19  estimates. The "estimate" refers both to the elapsed time and estimated cost. (Dkt. No. 42, Ex. E

20  at 50.) In fact, the only place the word "estimate" appears is in the section dedicated to "Project

21  Price and Payment Terms" where the dates are accompanied by monetary amounts due at the

22  completion of each milestone. However, an entire section of the Liferay Proposal is dedicated to

23  "Timelines/Schedule." (Id. at 46.) The Timelines section indicates BPA will deliver certain

24

1  results to T-Scan by certain dates "based on a 15-work week delivery timetable" and makes no

2  indication that the timetables are estimates. (Id.) BPA's second argument demonstrates that

3  there is a question of fact with respect to the significance of any scope changes requested by T-

4  Scan. BPA does not provide sufficient evidence to show that the "additional functionality" T-

5  Scan requested constituted a "significant scope change" such that BPA is entitled to judgment as

6  a matter of law. Finally, the fact that T-Scan's COO did not sign the Liferay Proposal until

7  January 28, 2009, does suggest that April 10, 2009, was not a workable deadline. However, T-

8  Scan did not cut off BPA's access to T-Scan's computers until December 15, 2009, over eight

9  months after the deadline T-Scan believed BPA had promised. It was reasonable for T-Scan to

10 believe there was a deadline, although it may have been delayed by the same amount of time

11 between the proposed start date and T-Scan's acceptance of the offer: thirty-seven days. With

12 this adjustment, the deadline would have been May 17, 2009. BPA failed to complete the project

13 by this point.

14     The Liferay Proposal reasonably includes a promise by BPA to deliver a complete project

15 by April 10, 2009. BPA is not entitled to judgment as a matter of law, and, as a result, the Court

16 denies BPA's motion for summary judgment as to the breach of contract claims.

17 **C.     T-Scan's Recovery of Amounts Paid to BPA**

18     BPA argues it is entitled to summary judgment as to T-Scan's recovery of money it paid

19 BPA under the August 2008 agreement. T-Scan does not contest this argument, and the Court

20 grants BPA's motion with respect to this point.

21     The Liferay Proposal explicitly states that T-Scan will owe BPA for the balance of the

22 work abandoned in favor of turning to the Liferay platform. (Dkt. No. 42, Ex. E at 50.) T-Scan

23 accepted this proposal. The later dispute of the Liferay Proposal is immaterial to T-Scan's

24

1  obligation.  Moreover, T-Scan does not respond to BPA's argument.  The Court grants BPA's

2  motion for summary judgment with respect to T-Scan's claim to recover amounts already paid to

3  BPA.

4  **D.**    **Motions to Strike**

5          BPA asks the Court to strike three hearsay statements in the Nieuwendam declaration.

6  Each of the statements relays information told to Nieuwendam by an Alfresco engineer and

7  pertains to the quality of work done by BPA.

8          The declaration reflects the statements of the Alfresco engineer and the statements are

9  offered for the truth of the matter asserted despite the fact that Nieuwendam does not have

10  personal knowledge of the Alfresco engineer's opinions.  As such, the Court finds these

11  statements inadmissible for lack of personal knowledge and strikes them.

12                                        **Conclusion**

13      1.  With respect to T-Scan's fraudulent inducement of a contract claim, the Court GRANTS

14          BPA's motion for summary judgment.  T-Scan has not submitted any competent

15          evidence of BPA's knowledge or intent, both of which are essential elements of fraud.

16      2.  With respect to the breach claims, the Court DENIES BPA's motion for summary

17          judgment.  The Liferay Proposal appears to set deadlines for BPA to make deliveries to

18          T-Scan.  A material issue of fact remains as to whether the parties contemplated

19          deadlines and what those deadlines were.  Accordingly, summary judgment is not

20          appropriate.

21      3.  With respect to T-Scan's recovery of money paid to BPA, the Court GRANTS BPA's

22          motion for summary judgment.  T-Scan accepted the Liferay Proposal, which

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 9

1  unambiguously stated that payment for the abandoned work on the August Proposal

2  would be due.  T-scan presents no argument in opposition to this BPA request.

3  4.  The Court GRANTS BPA's motion to strike inadmissible statements in the Nieuwendam

4      declaration.

5

6  The clerk is ordered to provide copies of this order to all counsel.

7  Dated this ___ day of May, 2011.

8

9                                    Marsha J. Pechman
                                     United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24