THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **T-SCAN CORPORATION**, a Washington Corporation,<br><br>    Plaintiffs,<br><br>    vs.<br><br>**BPA TECHNOLOGIES, INC.**, a California Corporation; and **ALFRESCO SOFTWARE AMERICAS, INC.,** a Delaware Corporation,<br><br>Defendants. | Case No.:  **2:11-cv-00255**<br><br>**PLAINTIFF'S TRIAL MEMORANDUM**<br><br>TRIAL DATE:<br>September 12, 2011 |

This action for breach of contract arose as a result of BPA Technologies failure to produce properly functioning software as specifically contracted by T-Scan Corporation.  T-Scan Corporation is a local litigation support company, providing document retrieval, production, and management services to law firms and insurance companies.  In order to provide more efficient and economical services to its clients, and to maintain consistency with market expectations, T-Scan Corporation retained BPA Technologies to produce functioning software to enable T-Scan clients to have secure access to documents retained in a secure on-line repository, among other functionality.  BPA Technologies promised, through multiple proposal interations, to be able to

PLAINTIFF'S TRIAL MEMORANDUM - 1

1   produce the requested functioning software.  After over eighteen (18) months, which included

2   numerous problems with the developing software, functioning software had yet to be produced.

3   Thus, in December 2009, T-Scan Corporation terminated the relationship with BPA

4   Technologies.

5        By the time that T-Scan terminated the relationship with BPA Technologies, T-Scan had

6   incurred substantial costs, including monies paid to train BPA employees with regard to T-

7   Scan's business and T-Scan's employees time in such training, and monies paid to T-Scan

8   employees to test daily the code written by BPA Technologies.  Further, upon BPA's direction,

9   T-Scan moved over its entire database to an Alfresco software platform, which was serving as

10  the base for BPA's software project.  The transfer of T-Scan's databases to Alfresco's production

11  environment caused a significant amount of manual work on behalf of T-Scan employees in

12  order to maintain full functionality for T-Scan's clients.  This manual work was to be automated

13  upon BPA's software implementation within ninety (90) days after transfer to the Alfresco

14  platform.  Nearly a year later, when T-Scan terminated the relationship with BPA, the automated

15  processes had yet to be developed.  In fact, as of the date of this trial, T-Scan is still incurring

16  significant costs in performing the manual tasks while working towards a new software solution.

17  These damages are significant to T-Scan.

18       Evidence at trial will establish that BPA breached the contact with T-Scan by failing to

19  deliver functioning software as promised by failing to have met established deadlines for the

20  production of properly functioning software.  In addition, evidence at trial will establish that

21  BPA's breach proximately caused significant damages to T-Scan.

22                    **I.     LEGAL CONTENTIONS**

23       T-Scan will pursue at trial compensatory damages from Defendant BPA Technologies,

24  Inc. ("BPA") for 1) breach of contract for failure to deliver software goods as agreed, and 2)

25  breach of contract for failure to deliver software goods on dates and times expressly stated and

26  set by Defendant BPA.

PLAINTIFF'S TRIAL MEMORANDUM - 2

1    T-Scan will pursue at trial the following affirmative defenses: lack of duty based failure

2    of performance.

3        1.    Defendant's Claims and Defenses:

4    BPA will pursue at trial the following affirmative defenses: prevention of performance,

5    set-off, failure to mitigate damages, and unjust enrichment.

6    BPA will pursue the following claims: breach of contract and breach of the covenant of

7    good faith and fair dealing.

## II.    FACTUAL CONTENTIONS

**The parties stipulate to the following facts:**

10       1.    Plaintiff T-Scan is a business that provides litigation support services and

11   medical, legal and insurance records storage and retrieval.

12       2.    In early 2008, T-Scan determined that if it created a Web-based interface to its

13   records storage database, the enhanced service would allow its existing customers to have ready

14   access to their records stored on T-Scan's computers, and would allow T-Scan to attract new

15   customers to subscribe to T-Scan's offerings.

16       3.    T-Scan learned of Alfresco's open-source records storage and retrieval software

17   ("Content Manager") and contacted Alfresco for the purpose of licensing the Alfresco Content

18   Manager.

19       4.    After speaking with the Alfresco representative, T-Scan learned that the Content

20   Manager would not serve all of T-Scan's needs, but being open-source software, it could easily

21   be modified to serve T-Scan's needs.

22       5.    Alfresco has a "Partner Network Program" ("PNP") wherein it collaborates with

23   other businesses who provide value-added services to further expand Alfresco's customer base.

24       6.    The PNP is designed to provide partner organizations with the expertise to

25   market, configure, customize and implement Alfresco solutions for customers worldwide.

26

PLAINTIFF'S TRIAL MEMORANDUM - 3

7.     Alfresco works with different categories of partners including those it categorizes as "System Integrators."

8.     According to Alfresco's Web site, "System Integrators provide expertise consulting, integration and migration services for Alfresco content management solutions. All System Integrators have trained and certified Alfresco consultants on staff."

9.     Alfresco informed T-Scan that BPA is a member of Alfresco's Partner Network Program and referred T-Scan to BPA.

10.     T-Scan contracted with BPA to acquire the software solution they needed to provide the new offerings it wished to make.

11.     On August 8, 2008, BPA submitted a proposal ("August Proposal"), which T-Scan's Information Technology Manager, Andre Nieuwendam, signed two days later.

12.     BPA informed T-Scan that none of the work that had been done under the August Proposal could be salvaged for the Liferay-based project.

13.     Between August 2008 and January 2009, the parties negotiated the details of the new development which was to include Liferay Portal.

14.     On December 30, 2008, BPA submitted a revised proposal for the work to be done in the Liferay project ("Liferay Proposal").

15.     The Liferay Proposal states, "BPA estimates that this project will take 31 weeks elapsed time…"

16.     The Liferay Proposal is a deliverables-based contract.

17.     T-Scan did not sign the Liferay Proposal until January 29, 2009, thirty days after the date indicated in the Liferay Proposal as the start date of the development.

18.     Development under the Liferay Proposal continued until December 15, 2009, when T-Scan cut off BPA's access to T-Scan's computers and servers.

19.     On February 24, 2010, by and through the law offices of The Chugh Firm, BPA sent T-Scan a demand for $101,631 for alleged services rendered that remain unpaid.  In the

PLAINTIFF'S TRIAL MEMORANDUM - 4

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
(253) 383-4500 - (253) 383-4501 (fax)

demand letter, BPA generally alleges that these fees are a result of "changes in scope" of the original project.

20.     T-Scan has made no payments to BPA for the development work provided by BPA under the Liferay Agreement.

**T-Scan Corporation further contends:**

1.     T-Scan invests significant time, effort and money in enhancing its offerings in order to stay ahead of its competition in this very competitive business.

2.     The Liferay Proposal includes dates by which BPA would complete certain deliverables, and it indicates that the development would be completed by April 10, 2009.

3.     T-Scan interpreted the Liferay Proposal timeline to mean that the 31-week schedule included in that proposal would commence once T-Scan accepted the proposal.

4.     While some dates in the Liferay Proposal may have changed nominally, at no time after January 29, 2009 did T-Scan ever agree with BPA to alter the 31-week timeline provided by BPA in the Liferay Proposal.

5.     Prior to the Liferay Proposal, BPA was fully trained regarding T-Scan business and required tasks and functionality of the software to be developed.

6.     There were no material changes to the required tasks and functionality of the software to be developed by BPA after the Liferay Proposal was accepted.

7.     There are no monies owing from T-SCAN to BPA due to the fact that the December 30, 2008 agreement (the Liferay Proposal) is a "deliverable-goods" agreement and BPA has not delivered the goods they promised.

8.     Between August 2008 and December 2009, on an almost daily basis, T-Scan gave BPA a great deal of feedback on the scores of deficiencies in the numerous versions of the software delivered to T-Scan by BPA.

9.     Between August 2008 and December 2009, T-Scan made representation to existing and prospective clients regarding the functionality promised by BPA.

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
(253) 383-4500 - (253) 383-4501 (fax)

10.     After terminating BPA's access to T-Scan computers, T-Scan sought the services of a company called Reva Solutions, but was thwarted in its efforts by Alfresco.

11.     BPA has not delivered a single useable piece of software to T-Scan.

12.     The software provided to T-Scan by BPA is of no value to T-Scan.

13.     Subsequent to ending its relationship with BPA, T-Scan has gone through extensive efforts to utilize the Alfresco software implemented by BPA by attempting to locate an Alfresco trained engineer that could perform the necessary modifications.  While the modifications possible to be completed, Alfresco has thwarted any trained engineer from performing the modifications without substantial payment to Alfresco.

14.     T-Scan has, after extensive failed negotiations with Alfresco, contracted with a third party vendor to utilize a Microsoft product for its purposes, a process which is still on-going.

15.     T-Scan incurred substantial employee costs in training BPA with regard to T-Scan's business and T-Scan's requirements for properly implemented software.

16.     Upon BPA's recommendation and promise to have properly functioning software in place within ninety (90) days, T-Scan transferred all of its data to the production environment of Alfresco, the base of BPA's software modifications.

17.     The transfer of T-Scan data to the Alfresco production environment has caused T-Scan to incur further employee costs in performing certain tasks manually, which was to have been performed automatically by the software modifications, including email notifications to clients.  But for the use of Alfresco production environment and BPA's failure to produce properly functioning software, T-Scan would not have incurred these extra costs and expenses.

18.     The software product T-Scan contracted BPA to produce was to resolve several manual tasks as automated features in the software, including client research, creating client record collection packets, and client invoicing.  Had BPA produced properly functioning software, T-Scan would have been relieved of employee costs for these tasks.

PLAINTIFF'S TRIAL MEMORANDUM - 6

1
2
3
4

### III.      STATEMENT OF ISSUES

5   1.      Whether BPA breached the Liferay Agreement by failing to meet deadlines for
          completion of performance, thereby requiring T-Scan to continue with a manual
6          process

7   2.      Whether T-Scan breached the Liferay Agreement by terminating BPA's access to
          T-Scan's computers and servers, thereby preventing BPA from completing
8          development.

9
10
11

### IV.      EVIDENTIARY ISSUES

12      It appears that the main evidentiary issues at trial will be regarding Defendant BPA's

13  objection to evidence pertaining to employee hours and records pertaining to deficiencies

14  discovered in BPA's software code.

15      Defendant BPA demands that documentation have been provided pertaining to employee

16  hours. However, T-Scan did not operate in business by keeping such hourly records.  Rather,

17  evidence pertaining to dedicated employee hours will be presented through the testimony of T-

18  Scan's in-house accountant.  The Court should permit the testimony of the T-Scan employee that

19  has actual knowledge of employee time allocation, regardless of whether documentation exists.

20      Defendant BPA objects to the introduction of evidence pertaining to deficiencies in

21  BPA's software because they were disclosed in May 2011.  T-Scan found these documents in

22  May 2011 and disclosed the immediately.   However, BPA's objection to late disclosure is

23  disingenuous because the deficiency reports had been sent to BPA by a T-Scan employee during

24  the time that BPA was writing software code for T-Scan.  Thus, BPA has had possession and

25  knowledge of these reports since well before the inception of litigation, and throughout the

26  litigation.  The Court should permit the deficiency reports to be admitted at trial.

PLAINTIFF'S TRIAL MEMORANDUM - 7

## V.     REQUESTED RELIEF

T-Scan Corporation requests recovery of compensatory damages incurred as a direct result of BPA Technologies Breach of the Liferay Agreement.  Theses damages are as follows:

| | |
|---|---|
| T-Scan Employee Time Spent on BPA Project | $117,586 |
| T-Scan Employee Time Spent Manually Creating Client Packets and Research, Which Was to Be Relieved if BPA Produced Properly Functioning Software | $188,800 |
| T-Scan Employee Time Spent Manually Sending Client Email Notifications, Necessary as a Result of BPA Use of Alfresco Production Environment But Failure to Deliver Functioning Software | $75,668 |
| T-Scan Employee Time Spent Manually Invoicing Clients, Which Was to Be Relieved if BPA Produced Properly Functioning Software | $121,703 |
| Costs incurred by T-Scan in training and educating BPA. | $79,000 |
| **TOTAL** | **$582,757** |

## VII.     CONCLUSION

Based upon the statements of law and facts contained herein, and upon the evidence which will be presented at trial, Plaintiff T-Scan Corporation will be asking the Jury and this Court to render a verdict in favor of T-Scan Corporation finding BPA Technologies to have breached the Liferay Agreement, can caused T-Scan Corporation damages in the amount of $582,757.

\\\\

\\\

\\

\

PLAINTIFF'S TRIAL MEMORANDUM - 8

1

2     RESPECTFULLY SUBMITTED this 7th day of September 2011.

3

4

5                        FREEMAN LAW FIRM, INC.

6

7

8                By:_ ____/s/ Spencer D. Freeman _____

9                    Spencer D. Freeman
                   WSBA No. 25069

10                   FREEMAN LAW FIRM, INC.
                   2104 North 30th Street

11                   Tacoma, WA 98403
                   Telephone: 253-383-4500
                   Facsimile: 253-383-4501

12                   sfreeman@freemanlawfirm.org
                   Attorney for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S TRIAL MEMORANDUM - 9